**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LARRY WILLIAMS; LNL
PUBLISHING, INC.,

     Plaintiffs - Appellants,

v.

GENESIS FINANCIAL
TECHNOLOGIES INC.; GLEN
LARSON; PETE KILMAN,

     Defendants - Appellees.

No. 18-1446
(D.C. No. 1:14-CV-03353-MSK-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **KELLY**, and **LUCERO**, Circuit Judges.
_____

     Plaintiffs-Appellants Larry Williams and LnL Publishing, Inc. appeal from the

district court's decisions to (1) award $58,052 in damages on their equitable unjust

enrichment claim rather than confirming an advisory jury verdict award of $1.5

million, and (2) dismissing their conversion of intellectual property claim. Williams

v. Fin. Tech. Inc., No. 14–CV–3353–MSK–STV, 2018 WL 1556261 (D. Colo. Mar.

30, 2018). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Mr. Williams is a market trader who develops "sentiments" and "indicators" — measures of market mood and trading strategies meant to help predict and take advantage of shifts in the market — which he presents to students at his paid seminars. A collection of sentiments, indicators, and other trading strategies is referred to as a "library." LnL Publishing, Inc. is a limited liability corporation through which Mr. Williams conducts business and is the successor in interest to his intellectual property. Genesis is a financial technology company whose flagship product is Trade Navigator, a platform that uses a custom programming language to encode libraries and allow traders to test trading ideas and concepts. Glen Larson is the president of Genesis.[1]

In the early 1990s, Mr. Williams began a quid pro quo business arrangement with Genesis. Under the arrangement, Mr. Williams would help promote and develop Genesis software, allow Genesis representatives to attend his seminars to sell its data subscription products, and use Mr. Williams's name, likeness, indicators, and sentiments on Trade Navigator. In exchange, Mr. Williams was to receive access to Trade Navigator, as well as two computers provided by Genesis. Mr. Williams would charge students a fee for attending one of his seminars, then instruct Genesis to give those students access to his libraries on their copies of Trade Navigator. The parties also agreed to share equally revenues from the sales of one of Mr. Williams's

---

[1] We refer to Plaintiffs-Appellants collectively as "Mr. Williams" and Defendants-Appellees collectively as "Genesis." Specific parties are named where necessary.

sentiments to be included in Trade Navigator, called LW Sentiment. The arrangement between the parties was oral and was never reduced to writing.

In 2010, Mr. Williams became suspicious that Genesis was not paying him the full amount owed under the revenue split arrangement. Genesis responded with an accounting, which showed that Mr. Williams was due a balance of $358,277.50. Genesis contended that Mr. Williams had agreed to assist in development of a new product, and revenues from that product would offset the balance due. Mr. Williams disputes that contention. In September 2012, Mr. Williams notified Genesis by letter that he intended to terminate the relationship. Genesis agreed to discontinue use of LW Sentiment and remove Mr. Williams's name and likeness from its materials. Genesis refused to terminate access to Mr. Williams's libraries by paid seminar students.

The following month, Mr. Williams sued Genesis, claiming: (1) breach of the LW Sentiment agreement; (2) unjust enrichment for continued use of Mr. Williams's (a) name and likeness, and (b) libraries, which he asserted to be his intellectual/personal property; and (3) conversion of intellectual property. Before trial, the district court granted Genesis's motion for judgment on the pleadings as to conversion of intellectual property claim, but denied it as to unjust enrichment. The case proceeded to a jury trial on the breach of contract and unjust enrichment claims. On the contract claim, the jury found that Mr. Larson had entered into an oral contract with Mr. Williams and awarded Mr. Williams $358,277.50, the balance outstanding under the revenue split agreement. IV Aplt. App. 843–44. The jury

3

rendered an advisory verdict on the equitable unjust enrichment claim against Genesis of $400,000 for Mr. Williams and $1.5 million for LnL Publishing. The verdict form did not differentiate between unjust enrichment by use of Mr. Williams's name or likeness and use of his libraries. Id. at 847–48.

Following the jury trial, Mr. Williams moved the court to confirm the jury's advisory verdict, while Genesis renewed its motion for judgment as a matter of law and to dismiss. See VI Aplt. App. 1191. The court denied both motions.

On Mr. Larson's motion as to breach of contract, the court found that there was sufficient evidence in the record to support the jury's verdict. The court concluded that Mr. Williams lacked a basis for his unjust enrichment claim as it relates to use of his libraries, because "[a]bsent the protection of intellectual property laws or a governing contractual arrangement proscribing the dissemination of ideas for valuable consideration, the creator of an idea retains no property right to control its use or dissemination." Id. at 1201. The court found that there was "no evidence" that the parties considered Mr. Williams's libraries to be protected under the quid pro quo arrangement. Id. at 1200. The court further concluded that Mr. Williams could support a claim for unjust enrichment for continued use of his name and likeness, and entered judgment in his favor for $57,052, with the amount significantly departing from the advisory jury verdict because the court felt it could not separate out the jury's reliance on supported versus unsupported theories of unjust enrichment in its quantification. Id. at 1211.

4

On appeal, Mr. Williams raises three issues. First, he argues that the district court erred by determining that he had no continuing property interest in his libraries sufficient to support an unjust enrichment claim. Mr. Williams asserts both that the district court misapprehended Colorado common law that he alleges gave rise to a legally protected property right, and that the district court clearly erred by finding there was "no evidence" that the parties considered the libraries contractually protected under the quid pro quo arrangement. Second, Mr. Williams contends that the district court violated his Seventh Amendment rights by disregarding a jury finding that the libraries were protected under the quid pro arrangement, which he claims is included by "necessary implication" in the jury's breach of contract verdict in his favor. Finally, Mr. Williams argues that the district court incorrectly concluded that Colorado common law does not recognize the tort of conversion of intellectual property. In response, Genesis renews its argument that the Copyright Act preempts Mr. Williams's unjust enrichment claim.

**Discussion**

District court factual findings are reviewed under the clearly erroneous standard. Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1274 (10th Cir. 2001). Where the district court's view of the evidence is plausible considering the record as a whole, this court may not reverse even if it would have weighed the evidence differently as the trier of fact. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).

5

Whether the district court violated a party's Seventh Amendment rights by adopting findings of fact that conflict with the jury's explicit or implicit findings is reviewed de novo.  See Bangert Bros. Constr. Co., Inc. v. Kiewit W. Co., 310 F.3d 1278, 1298–99 (10th Cir. 2002).

A dismissal under Fed. R. Civ. P. 12(c) is reviewed under the standard applicable to a Rule 12(b)(6) motion.  Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1223 (10th Cir. 2009).  Thus, review is de novo and we must determine whether the complaint plausibly states a claim for relief.  Finally, review of the district court's interpretation of state law in a diversity action is de novo.  Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991); Dang v. UNUM Life Ins. Co. of Am., 175 F.3d 1186, 1189 (10th Cir. 1999).

**A.  Protectable Property Interest**

Mr. Williams attacks the district court's finding that he lacked a protectable property interest in his libraries on three fronts.  First, he argues that the district court committed clear error by stating that there was "no evidence" that the parties considered the libraries protected under the quid pro quo arrangement.  Mr. Williams testified that he strictly controlled access to his libraries during the term of the contract, but that hardly amounts to a conclusive showing of a promise by Genesis to protect those libraries in the event of termination.  Based on the record as a whole the district court could plausibly have found that that the quid pro quo arrangement did not contain a latent promise by Genesis to protect Mr. Williams's libraries in the future.  See Anderson, 470 U.S. at 573.

6

Next, Mr. Williams argues that the district court ignored Colorado law that recognizes a protectable property interest in his libraries because of his "expenditures in developing the libraries and [his] agreement with Genesis for the right to use them." Aplt. Br. at 23. Mr. Williams relies on Cablevision of Breckenridge v. Tannhauser, a Colorado Supreme Court case concerning a housing complex that contracted with Cablevision to provide cable services using infrastructure that required significant capital investment. 649 P.2d 1093 (Colo. 1982). Residents of the Tannhauser complex then cancelled their Cablevision services, installed their own amplifier connected to the Cablevision line, and began accessing cable television and FM radio services without paying Cablevision any fees. Id. at 1095. The residents later extended this arrangement to a new building by installing an additional line to Cablevision's connection. Id. The court held that "[a]lthough Cablevision does not acquire an exclusive right in the broadcast signals it receives . . . [it] does have a legally protected interest in the reception, processing, and distribution system it has installed and in the service that this system enables Cablevision to provide." Id. at 1098. The court also emphasized that the "defendant's initial payment for this service . . . amply demonstrate[s] both the beneficial service provided by Cablevision and the appreciation of that service by the defendants." Id. at 1097.

Cablevision is distinguishable. Mr. Williams attempts to analogize his libraries to the signals retransmitted by Cablevision and the "time and money" he invested to "develop the investment strategies, cultivate a public image and a market for these strategies, and create a process by which interested parties could pay for

7

access to the strategies" to the significant capital investment required for signal retransmission. Aplt. Br. at 22. This analogy fails for two reasons. First, Genesis never paid Mr. Williams for access to his libraries. Rather, Mr. Williams was paid by seminar students and then instructed Genesis to grant them access to his libraries. Second, Cablevision invested hundreds of thousands of dollars in order to sell the "valuable service" that was being enjoyed without cost by Tannhauser residents, while Mr. Williams invested no resources to make his libraries available to students on Trade Navigator. See Cablevision, 649 P.2d at 1095. The resources and expenditures highlighted by Mr. Williams relate to his general business development and do not represent an investment made as a condition precedent to offering his libraries on Trade Navigator.

Finally, Mr. Williams argues that the district court violated his Seventh Amendment rights by improperly ignoring facts found by necessary implication in the jury's decision on the breach of contract claim. Mr. Williams contends that the jury's finding that Genesis breached the contract to split revenues from sales of LW Sentiment "includes, by necessary implication, the common finding that the libraries were protected property under the parties' agreement." Aplt. Br. at 29. He argues that, as part of its breach of contract verdict, the jury implicitly found that Genesis "had an obligation to pay for the use of the libraries." See id.

The Seventh Amendment requires that where legal and equitable claims are tried together, a court is bound by the jury's resolution of factual issues common to both claims. Skinner v. Total Petroleum, Inc., 859 F.2d 1439, 1443 (10th Cir. 1988),

8

superseded by statute on other grounds. Courts are bound both by facts expressly found and those that a jury verdict reflects by necessary implication. Ag Servs. of Am., Inc. v. Nielsen, 231 F.3d 726, 732 (10th Cir. 2000). But the jury's findings on the contract — which dealt primarily with disputes over LW Sentiment revenues and resulted in a damages award for the amount due under that arrangement — do not necessarily imply that it found that the libraries were protected property, much less that Genesis had a contractual obligation to pay for their use. The jury made no express or implied finding about the protectability of the libraries. Consequently, the district court did not err by making its own finding of fact on this issue.

## B. Conversion

Mr. Williams contends that the district court improperly dismissed his conversion claim. Under Colorado law, conversion is "any distinct, unauthorized act of dominion over personal property belonging to another." Rhino Fund, LLLP v. Hutchins, 215 P.3d 1186, 1195 (Colo. App. 2008) (quoting Glenn Arms Assocs. v. Century Mortg. & Inv. Corp., 680 P.2d 1315, 1317 (Colo. App. 1984)). A demand for return of the property and refusal by the controlling party are predicates to a successful claim. Glenn Arms, 680 P.2d at 1317. The structure of conversion claims under Colorado law therefore suggests that they function mostly as a legal remedy for the wrongful removal or retention of material things.

The district court noted that "courts in Colorado have not clearly indicated whether intangible intellectual property can be the subject of a conversion" and concluded that "[c]ourts which have addressed the subject typically find that such

9

property is incapable of being converted." VII Aplt. App. 735–36. It relied on several recent cases rejecting claims for conversion of intellectual property. See Cequent Performance Prods., Inc. v. Let's Go Aero, Inc., No. 10-cv-02921-WDM-CBS, 2011 WL 1743418 (D. Colo. May 5, 2011); Univ. of Colo. Found. Inc. v. Am. Cyanamid, 880 F. Supp. 1387 (D. Colo. 1995), vacated on other grounds, 196 F.3d 1366 (Fed. Cir. 1999).

Mr. Williams relies upon McLaughlin v. Clementi, in which the Colorado Supreme Court characterized a trucking permit as an "intangible right being properly subject to conversion." 355 P.2d 100, 104 (Colo. 1960). The case says nothing about whether intangible intellectual property is convertible, which is the issue here. Moreover, the permit in McLaughlin was held convertible because it fell "within the category of conversion of a document amounting to the conversion of an intangible right." Am. Cyanamid, 880 F. Supp. at 1395 (emphasis added). No similar document is present here.

Mr. Williams next turns to Steward Software Co. v. Kopcho, a Colorado Supreme Court case concerning civil theft of software source code. 266 P.3d 1085 (Colo. 2011). The court observed that a "claim for theft of the software code is no different from a claim for theft of any other literary work," likening it specifically to theft of an original manuscript from an author. Id. at 1088. Mr. Williams argues that his libraries are "nearly identical" to the source code in Steward. Aplt. Br. at 34. But Mr. Williams's claim is founded on conversion of his ideas, strategies, and sentiments, not computer software containing them or lines of code embodying their

10

original form, a distinction that is not erased by styling the claim as for conversion of "intellectual and/or personal property." Id. at 32. The analogy to Steward is inapt.

Finally, Mr. Williams argues that his libraries are convertible because they have been "reduced to tangible form," by inclusion in Trade Navigator. Id. at 34. We are unpersuaded that his libraries are analogous to a document into which intangible rights are merged, e.g., a promissory note, bond, or stock certificate.

In view of our disposition, it is unnecessary to reach Genesis's argument that Mr. Williams's claim for unjust enrichment is preempted by the Copyright Act.[2]

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[2] The district court based some of its unjust enrichment award on data fees paid to Genesis by customers who bought Trade Navigator after Mr. Williams terminated the arrangement. See VI Aplt. App. 1204, 1211. It reasoned that "some new customers, familiar with Mr. Williams, might nevertheless have discovered his past association with Trade Navigator (and the fact that his libraries can be included) and decided to give it a try." Id. at 1204. While the libraries figured into this analysis as an element of the quid pro quo arrangement, the award was based on the continued benefit Genesis derived from its past association with Mr. Williams, not from use of the libraries. We therefore do not believe that a finding sustaining copyright preemption would reach these portions of the unjust enrichment award.

11